# Richmond.

## STANDARD SEWING MACHINE CO. V. GUNTER.

### MARCH 10, 1904.

1. CONTRACTS—*Satisfaction—Part Payment—Burden of Proof.*—Part payment of a liquidated debt then payable was not a satisfaction at common law, although expressly so agreed between the parties, and while the doctrine has been changed by section 2858 of the Code, still the burden is upon the debtor to show that the payment of less than was due was "expressly accepted by his creditor in satisfaction, and rendered in pursuance of an agreement for that purpose," and this he has failed to show in the case in judgment.

Appeal from a decree pronounced by the Law and Chancery Court of the city of Norfolk, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*R. Randolph Hicks* and *A. G. Collins,* for the appellant.

*Burroughs & Bro.,* for the appellee.

KEITH, P., delivered the opinion of the court.

It appears from the record that the Standard Sewing Machine Company from time to time furnished C. C. Gunter with sewing

machines to be disposed of by him as its agent, and to be accounted for at prices stipulated in the several contracts. Gunter's compensation was to consist of the difference between what the company was to receive, and the price at which the sewing machines were sold upon the market. Without going into the details of these transactions, it is sufficient to say that Gunter failed properly to account to the Sewing Machine Company, and that he was investing the money, which he should have paid to his principal, in real estate.

In July, 1901, Gunter was largely indebted to the company, and on July 10, 1901, he executed a deed of trust, in which his wife united, conveying the real estate which had been thus purchased by him with the money of the Standard Sewing Machine Company, and certain other real estate, to Allen G. Collins, trustee, to secure the balance due, evidenced by a note for $3,326.95, payable on demand. By another writing, dated July 10, 1901, filed as Exhibit "G," it was agreed that this note, secured as aforesaid, was to be held as security also for any additional balance which might become due under two agreements of the same date, filed as Exhibits "D" and "E," by the first of which Gunter acknowledged that he had in his hands, as of that date, leases with the parties named, showing the amounts due under said leases, aggregating $5,254.35, which are in the name of C. C. Gunter & Co., and are for sewing machines sold for account of the Standard Sewing Machine Company, and which Gunter admitted were in his hands for collection only, and for which collections he agreed to make weekly reports, accounts, and settlements. And by Exhibit "E," the Standard Sewing Machine Company agreed to deliver on consignment to Gunter from time to time sewing machines and parts of sewing machines as manufactured by said company, in such quantities as the officers or agents of said company might deem sufficient to meet the trade or business of Gunter. Then follows the

prices at which these machines were to be listed to Gunter, the obligation on the part of Gunter to employ himself diligently in selling these machines to responsible parties, that he would not sell at a price less than ten *per cent.* above the listed price thereof; that he would make monthly reports, and that he would remit and pay over weekly the money received by him; and concludes with the provision that at any time, upon a settlement between Gunter and said Company, "the said company will take into its possession all machines of its make, and all contracts of lease or sale, and will proceed to collect such contracts of lease or sale and pay the costs and expenses thereof, and after the net receipts shall amount to the value of such consigned machines and parts of machines, then it will pay to said Gunter an amount equal to the surplus of sales and leases of such sewing machines over and above the consigned values, such amount to be payable in the uncollected contracts of sale or lease of machines at their face values, and not in money."

After July 10, 1901, pursuant to its agreement set forth in Exhibit "E" of July 10, 1901, the Sewing Machine Company consigned many machines and attachments to Gunter, for part of which he failed to account. In the month of July, 1902, there was due from Gunter to the Sewing Machine Company, as appears from his answer, a balance, over and above the note for $3,326.95, of $889.84, making a total of $4,216.79, with some accumulations of interest to be added.

The Sewing Machine Company having directed Collins, as trustee, to sell the property conveyed to him, Gunter requested S. B. Lucy, the manager of the Sewing Machine Company, to come to the city of Norfolk, with a view to the settlement of this affair, and accordingly Lucy, with his counsel, Allen G. Collins, went to Norfolk, and on the 21st of August had an interview with Gunter. Gunter stated that he had made arrangements by which he would be enabled to pay $3,500, but the Sewing Machine Company declined to take that sum in satisfaction of

its demands. After further conference, Gunter stated that he would be able to raise $3,700, and it was finally agreed between him and the Sewing Machine Company that that sum would be accepted in full settlement of all obligations upon the part of Gunter to the Sewing Machine Company. This sum of $3,700 Gunter expected to procure from E. M. Baum, representing a building and loan company, and on the same day they had an interview with Baum, who informed them that his company had agreed to lend Gunter $3,700, and take a deed on the property, and that he would get the money on the following day. On the next morning, which was August 22, Lucy and Collins went to the office of Baum, who then stated that Gunter had executed the necessary papers, but that Mrs. Gunter had not, and then, for the first time, told them that before Gunter could withdraw the $3,700 he would have to pay to the company $300. In other words, that the sum available to Gunter upon the loan would be only $3,400. Collins then went to Gunter's store, told him that Baum was ready for Mrs. Gunter to execute the papers, and also what Baum had said about the $300. Gunter said he knew nothing about it, and knew of no reason why the $300 should be deducted, and that his understanding was that he would receive $3,700. Thereupon Gunter set out in company with Collins to go to the office of the building association. Upon arriving at the door, Gunter suggested that Collins should go up to Baum's office on the upper floor, while he went into the office of the association to speak to the treasurer, and that he would come up at once. Collins went up to Mr. Baum's office, where Lucy was awaiting him, and in a few minutes Mr. Baum came in. When asked if he had seen Gunter, he replied that he had just left him, that he did not know where Gunter had gone, but he was instructed by Gunter to turn the money over to the Sewing Machine Company, and to take such papers as the Sewing Machine Company would give to him, and stated that Gunter would pay only the sum of $3,400, a check for which was

Opinion.

in Baum's possession. Collins and Lucy informed Baum that such was not their understanding; that they were to receive $3,700, and that they were not willing to accept the sum of $3,400. They went at once to Gunter's place of business, but he was not there, and they spent a large part of the remainder of the day trying to see him. They sent word to him, through his clerk, that they would be back on the following morning at 8 o'clock, and that they were not willing to take $3,400 in full settlement, and were anxious to see him. On the morning of the 23d of August they again went to his office at the appointed hour and were told by Gunter's clerk that Gunter said it was unnecessary for him to see them, and that he was worried, and thereupon they returned to Baum's office, and Baum asked them to cancel Exhibits 1, 2, 3 and 4, filed with the answer of Gunter, the first two of which are contracts between the Sewing Machine Company and Gunter for the consignment of sewing machines, dated the 8th of February, 1898, and the 12th of January, 1899, Exhibit No. 3 bearing date July 10, 1901, and which is identical with Exhibit "O" of plaintiff, and Exhibit No. 4 being a second contract of the same date, which is identical with Exhibit "D" filed with plaintiff's bill. Thereupon Lucy complied with this demand, and turned over to Baum the leases made from time to time in the name of C. C. Gunter, and C. C. Gunter & Co., and received from Baum the check for $3,400. During the interview between Baum, Collins and Lucy on the 23d of August, Mr. Collins said to Baum that he had on the night before prepared a writing, setting forth the extent of the settlement, and offered it to Mr. Baum to read, who replied, "I am not Mr. Gunter's counsel, and do not intend to sign any paper. He simply instructed me to hand you the money and take from you such papers as you gave me, and you would know what papers they were."

This is the substance of the transaction as stated by Collins and Lucy. It appears from their testimony that they from

the beginning declined to accept in satisfaction of their claims against Gunter a less sum than $3,700, and that their position was fully understood by Gunter.

Baum's account of the transaction is that they declined in the first place to receive any sum less than $3,700; that he informed them that he was authorized to enter into no negotiations, that he was Gunter's agent only to the extent of receiving from them certain papers and paying them the sum of $3,400, which he understood was to be received by them in full satisfaction of all their demands against Gunter.

The preponderance of the evidence is with the appellant. When we consider that Gunter's original proposition was to pay $3,500 in full settlement; that it was declined; that he then, as he supposed, consummated an arrangement by which he would be enabled to pay $3,700, which his creditor agreed to accept in full satisfaction; that when it appeared that the building association would only advance the sum of $3,400, Gunter concealed himself from his creditor, and left the affair in the hands of Baum, with vague instructions to take from the Sewing Machine Company such papers as it would deliver; that when, at the final interview between Baum, representing Gunter, and Lucy and Collins, representing the Sewing Machine Company, as appears from the evidence of two of the three witnesses, Baum was expressly told that they would not receive the $3,400 in full satisfaction, and that to this declaration he replied, "I don't blame you, for he (Gunter) has treated you very badly"; it is impossible for us to say that the $3,400 was expressly accepted by the creditor in full satisfaction of his demands. There is no doubt, from Gunter's own statement, that his debt at this time amounted to more than $4,300. At common law, no sum less than that would satisfy the demand.

"A party never can be held to surrender his rights under contract, unless it appears that he made the surrender understandly, and intentionally and freely, nor can such surrender or re-

lease be implied by his act, unless he understood at the time that such would be the effect of his act.    It never can be implied by the act of a party, accepting a part of what he had a right to demand, that he released the security for the balance without consideration."    *Lee* v. *Harlow,* 75 Va. 29 ; *Smith* v. *Phillips,* 77 Va. 548 ; *Seymour* v. *Goodridge,* 80 Va. 303.

That such was the law prior to the Code of 1887 is conceded. By section 2858 of the Code it is provided:    "Part performance of an obligation, promise or undertaking, either before or after a breach thereof, when expressly accepted by the creditor in satisfaction, and rendered in pursuance of an agreement for that purpose, though without any new consideration, shall extinguish such obligation, promise, or undertaking."

The burden of proof was upon Gunter to bring himself within the influence of that statute, and to show that the sum of money which he paid in part performance of his obligation was "expressly accepted by his creditor in satisfaction and rendered in pursuance of an agreement for that purpose," and this he has not done.

It further appears from the record that after the transactions just narrated, which resulted in the release of the deed of trust and the surrender and cancellation of certain papers, Gunter proceeded to notify those who owed balances upon sewing machines purchased through Gunter, as the agent of the Standard Sewing Machine Company, that he alone was authorized to collect from them, and that he would hold them responsible if they paid any other person.    The Standard Sewing Machine Company, as appears from Exhibit "H" with its bill, dated August 30, 1902, notified Gunter, "not to reclaim any machine which has been sold or leased in the name of the Standard Sewing Machine Company.    We hereto attach a list of contracts marked Exhibit I, which shows the balances due as reported by you as of June 1, 1902.    You are specially notified not to collect anything in full or on account of any lease or contract made in the name of the Standard Sewing Machine Company.    .    .    .

We hold the original contracts listed, and will proceed to collect the balances due, and will look to you to strictly verify those balances." Gunter disregarded this notice, proceeded with his efforts to collect the balances due upon the leases and contracts above referred to, and thereupon the Standard Sewing Machine Company filed its bill, charging that Gunter was insolvent, that he had mortgaged his real estate to its full value, and should he collect these contracts or leases the company would be unable to recover anything from him. The bill concludes with a prayer for a receiver and an injunction, and that Gunter may be required to account as bailee or consignee for all moneys collected by him since June 1, 1902. Upon the coming of the answer and the proofs, the Court of Law and Chancery was of opinion that the allegations of the bill were not sustained, that the sum of $3,400 was paid by the defendant on the 23 of August, 1902, and accepted by the plaintiff in full settlement of all claims against him, and he thereupon became entitled to all the leases in the bill and proceedings mentioned.

We having reached a different conclusion, it follows that the decree of the Court of Law and Chancery must be reversed, and the cause remanded for further proceedings to be had therein not inconsistent with this opinion.

*Reversed.*